**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| Andres Guzman,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Apple Inc.,<br><br>　　　　Defendant. | Case No.: 25-cv-12750<br><br>District Judge: Hon. April M. Perry<br>Magistrate Judge: Hon. M. David Weisman |

## ANSWER TO COMPLAINT AND JURY DEMAND

Defendant Apple Inc. ("Defendant" or "Apple"), by and through its attorneys, hereby answers the allegations contained in the Complaint and Jury Demand ("Complaint") filed by Plaintiff Andres Guzman ("Plaintiff"), in accordance with the numbered Paragraphs below.

## PARTIES[1]

1.　　Plaintiff Andres Guzman is an individual who resides in Chicago, Illinois.

**ANSWER:**　Defendant admits that its personnel records reflect that Plaintiff's last known residence was in Chicago, Illinois. Defendant otherwise lacks sufficient knowledge or information as to the truth of the remaining allegations in Paragraph 1 and, therefore, denies same.

2.　　Defendant Apple Inc. is a California corporation registered and authorized to do business in Illinois, operating multiple retail stores in Chicago, including the Lincoln Park store at 801 W. North Avenue where Mr. Guzman was employed.

**ANSWER:**　Defendant admits the allegations in Paragraph 2.

---

[1] The Complaint contains several headings and/or sub-headings. Defendant does not consider these to be substantive allegations within the Complaint to which a responsive pleading is required. However, to the extent a response is required, Defendant denies any and all allegations contained within any heading and/or sub-heading of the Complaint.

## JURISDICTION AND VENUE

3.      On January 1, 2024, Andres Guzman filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR), and the Charge was perfected on July 30, 2024, alleging discriminatory and unlawful conduct during his employment with Apple. In parallel, Mr. Guzman filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on February 28, 2024, and later amended it on July 8, 2024, alleging discriminatory and unlawful conduct during his employment with Apple. On March 10, 2025, the Illinois Department of Human Rights conducted a Fact-Finding Conference (FFC), at which testimony and evidence were adduced concerning the discriminatory and unlawful treatment Mr. Guzman was subjected to during his employment. Following the proceedings, the IDHR issued a Dismissal Notice on June 10, 2025.

**ANSWER:**    Defendant admits it received a copy of a Charge of Discrimination that Plaintiff filed with the IDHR, which is dated July 10, 2024, and is stamped "received" by the IDHR on July 30, 2024.    Defendant further admits that the IDHR Charge alleged, among other things, discrimination. Defendant further admits it received a copy of a Charge of Discrimination that Plaintiff with the EEOC, which reflects it was "digitally signed by" Plaintiff on February 28, 2024, and which alleged, among other things, discrimination. Defendant also admits the IDHR conducted a fact finding conference on March 10, 2025 and, on June 10, 2025, served a written notice that it had determined that there was a lack of substantial evidence to support Plaintiff's allegations. Defendant denies it discriminated against Plaintiff or otherwise engaged in any unlawful conduct, and denies that the testimony or evidence at the IDHR fact finding conference showed discrimination or unlawful conduct.  Defendant lacks sufficient knowledge or information to form

a belief as to the truth of the remaining allegations in Paragraph 3 and, therefore, denies those allegations.

4.      This Court has personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209(a)(1) and (a)(2) because Defendant transacts business in Illinois, including operating the Lincoln Park store where Mr. Guzman worked and where the discriminatory and retaliatory acts were committed.

**ANSWER:**     Defendant admits it transacts business in Illinois, operates a retail store in Lincoln Park, Chicago, and that Plaintiff worked at that retail store. Defendant admits this Court has personal jurisdiction over Defendant in connection with Plaintiff's allegations, but denies that personal jurisdiction arises under 735 ILCS 5/2-209(a)(1) and (a)(2). Defendant denies it discriminated or retaliated against Plaintiff or otherwise engaged in any unlawful conduct giving rise to any of his claims before this Court and, except as specifically admitted, denies all other allegations in Paragraph 4.

5.      Venue is proper in Cook County pursuant to 735 ILCS 5/2-101(2) because the events giving rise to this action occurred in Cook County, Illinois, and Defendant conducts business here.

**ANSWER:**     Defendant admits it conducts business in Cook County, Illinois, and that certain of the allegations in the Complaint occurred in Cook County, Illinois. Defendant further admits venue is proper in this Court, but denies that venue arises under 735 ILCS 5/2-101(2). Defendant denies that any action taken by it gives rise to any of Plaintiff's claims before this Court and, except as specifically admitted, denies all other allegations in Paragraph 5.

## **FACTS**

6.      In or around November 2019, Mr. Guzman began working for Defendant as a Seasonal Worker at the Michigan Avenue store.

**ANSWER:**    Defendant admits Plaintiff began working at Defendant's Michigan Avenue retail store as a Seasonal Worker/Specialist on or around November 14, 2019.

7.      In or around October 2021, Mr. Guzman began working at the Lincoln Park store in Chicago, Illinois, in a part-time Specialist role, and was promoted to Operations Specialist in April 2022, a position he held until his termination on April 11, 2024.

**ANSWER:**    Defendant admits it re-hired Plaintiff at Defendant's Lincoln Park retail store on or around October 22, 2021 as a part-time Specialist, and that he most recently held the job title Operations Specialist. Defendant further admits it terminated Plaintiff's employment effective April 11, 2024.  Defendant denies the remaining allegations in Paragraph 7.

8.      Mr. Guzman performed his job duties in a satisfactory manner and had no material performance issues prior to engaging in the protected activities described herein. His positive performance history provides a baseline which shows that later discipline did not arise from longstanding performance deficiencies. In fact, in Spring 2022, Mr. Guzman was ranked top three in Sales for one quarter while serving as a Specialist in the Product Zone. In 2023, he was also ranked among the top three Runners in his Operations Specialist role, an achievement that was celebrated at a store meeting in January 2024.

**ANSWER:**    Defendant denies the allegations in Paragraph 8.

9.      Mr. Guzman is Mexican American, Latino and Brown. He is also an outspoken advocate for Palestinian and Black coworkers and other minorities.

**ANSWER:** Defendant admits Plaintiff self-identified as Mexican American. Defendant lacks knowledge or information sufficient to form a belief regarding the remaining allegations in Paragraph 9 and therefore denies the allegations.

### November 9, 2023, Advocacy on Behalf of Black & Palestinian Colleagues

10.     October 7, 2023, marked the beginning of the Israel's large-scale offensive against Gaza, resulting in mass civilian casualties and widespread destruction. On January 26, 2024, the International Court of Justice (ICJ), *in Application of the Convention on the Prevention and Punishment of the Crime of Genocide in the Gaza Strip (South Africa v. Israel)*, found that South Africa had presented a plausible claim that Israel's conduct could constitute genocide under the Genocide Convention. The Court ordered binding provisional measures requiring Israel to prevent acts of genocide against Palestinians in Gaza, ensure the provision of humanitarian assistance, and prevent and punish incitement to commit genocide. See Order of Jan. 26, 2024, I.C.J. Rep. 2024, ¶¶ 54-78, 86.

**ANSWER:** Defendant states that Paragraph 10 attempts to characterize an international conflict as well as a legal document that is a matter of public record and therefore does not require Defendant's admission or denial of same. Defendant admits the existence and date of the referenced document. Defendant lacks knowledge or information sufficient to form a belief regarding the remaining allegations in Paragraph 10.

11.     On or around October 9, 2023, CEO Tim Cook issued an internal statement to all Apple employees expressing support for Israel but omitting any mention of Palestine. In response, Mr. Guzman posted a message on WorkJam, Defendant's internal messaging system for employees, expressing solidarity with the Palestinian people and calling for recognition of Palestinian suffering.

**ANSWER:** Defendant admits that on or around October 9, 2023, Chief Executive Officer Tim Cook sent an email to Apple employees regarding the events of October 7, 2023. Defendant denies Plaintiff's mischaracterization of the contents of the October 9, 2023 email. Defendant denies the remaining allegations in Paragraph 11.

12. On or around November 9, 2023, Mr. Guzman and ten other employees (the majority of whom are people of color) emailed store and corporate leadership a letter detailing discrimination against Palestinian and Black employees and listing five demands for reform.

**ANSWER:** Defendant admits that on November 9, 2023, Plaintiff sent an email to Apple employees and represented that the email identified ten other individuals as purported signatories. Defendant lacks knowledge and information sufficient to form a belief as to the race or national origin of those ten other individuals, or whether they identified as "people of color" and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 12.

13. The letter began by noting that Defendant leadership's discomfort with Palestinian identity and expression had seeped into the culture of individual stores, including Lincoln Park. Mr. Guzman and his colleagues stressed that Palestinian employees felt silenced, dehumanized, and stereotyped, as if their identity were inherently threatening. They explained that Defendant's refusal to even acknowledge the word "Palestine" or permit open discussion of Palestinian suffering conflicted with its own public commitments to diversity, equity, and inclusion, and was creating a hostile work environment for Palestinian employees.

**ANSWER:** Defendant states that the allegations in Paragraph 13 purport to characterize a written document which is the best evidence of its contents. Defendant denies the allegations in Paragraph 13 to the extent they fail to fully and accurately describe the referenced document. Defendant denies the remaining allegations in Paragraph 13, and denies it discriminated against

Plaintiff or anyone else, created a hostile work environment, or otherwise engaged in any unlawful conduct.

14.     The letter also highlighted broader systemic discrimination at the Lincoln Park store, particularly against Black colleagues. The writers observed that Black employees made up approximately one-quarter of the workforce, yet 10 out of the last 14 terminations involved Black colleagues. They noted that discipline was disproportionately used against Black and brown staff, who were also the ones most frequently subjected to misconduct write-ups, Documented Coaching, and terminations. As they explained, "These experiences leave us hurt, angry, exhausted, sad, and discouraged from coming into work. This is our reality. This is the weight we carry."

**ANSWER:**     Defendant states that the allegations in Paragraph 14 purport to characterize a written document which is the best evidence of its contents. Defendant denies the allegations in Paragraph 14 to the extent they fail to fully and accurately describe the referenced document. Defendant denies the remaining allegations in Paragraph 14, and denies it discriminated against Plaintiff or anyone else or otherwise engaged in any unlawful conduct.

15.     The letter concluded with five demands: the creation of a Middle Eastern and North African employee resource group, protection of Palestinian employees in the workplace, a written apology for harassment and disparate treatment, mandatory unconscious bias training for all staff, and disciplinary accountability for racist conduct.

**ANSWER:**     Defendant states that the allegations in Paragraph 15 purport to characterize a written document which is the best evidence of its contents. Defendant denies the allegations in Paragraph 15 to the extent they fail to fully and accurately describe the referenced document.

Defendant denies the remaining allegations in Paragraph 15, and denies it discriminated against or harassed Plaintiff or anyone else or otherwise engaged in any unlawful conduct.

16. Management never responded to the letter or acknowledged the concerns raised within it.

**ANSWER:** Defendant denies the allegations in Paragraph 16.

17. This pattern was not new. At his prior assignment at the Michigan Avenue store, Senior Manager Austin Kihn was notorious for firing Black employees and even used a racial slur in front of staff, according to former employee Joy Richard. After his transfer to the Lincoln Park store, he continued the same pattern of subjecting employees of color to harsher discipline while white employees were not held to the same standards. Mr. Guzman was one of the employees singled out under this pattern.

**ANSWER:** Defendant denies the allegations in Paragraph 17.

### Selective Ban on Palestinian Cultural Symbols

18. Near the end of October, Mr. Guzman and several colleagues began wearing "Free Palestine" wristbands in solidarity with both the people of Gaza and with coworkers who felt silenced and excluded in the workplace, particularly those of Arab and Palestinian background. Mr. Guzman also wore a keffiyeh (patterned scarf), a widely recognized symbol of Palestinian culture and heritage.

**ANSWER:** Defendant admits that Plaintiff at times wore a bracelet that said "Free Palestine" and a keffiyeh in the store. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 18 and, therefore, denies those allegations.

19.     On or around November 25, 2023, Store Leader Jo Allen and Senior Manager Kathy Tobiaski pulled Mr. Guzman aside and ordered him to remove his "Free Palestine" bracelet, citing safety concerns. Mr. Guzman asked what would happen if he continued wearing the bracelet. Allen stated it would be treated as misconduct and would violate Defendant's "Respect at Apple" policy. Mr. Guzman then asked if he could wear the bracelet inverted; Allen and Tobiaski agreed.

**ANSWER:**     Defendant admits that on November 25, 2023, Jo Allen and Kathy Tobiaski spoke with Plaintiff about his bracelet that said "Free Palestine," expressed concerns about safety in the workplace, and explained that they were asking all employees to refrain from wearing items that reflected a preference in the conflict. Defendant denies the remaining allegations in Paragraph 19.

20.     On or around November 30, 2023, Manager Kevin Aguilera pulled Mr. Guzman aside and stated that leadership was now communicating a new "no bracelet" policy to the entire store. This ban then evolved to prohibit anything with a Palestinian flag; no inverted bracelet, necklace, pins, or jewelry would be allowed.

**ANSWER:**     Defendant admits that on or around November 30, 2023, Manager Kevin Aguilera counseled Guzman regarding his "Free Palestine" bracelet. Defendant denies the remaining allegations in Paragraph 20.

21.     On or around December 1, 2023, management began enforcing the policy, instructing more than 40 workers to remove their Palestine bracelets.

**ANSWER:**     Defendant admits that it limited the wearing of certain items in the store to further compliance with Apple policy and ensure all employees and customers felt safe in the store, among other reasons, and admits that it asked employees to remove certain bracelets consistent with its Employee Presentation policy. Defendant denies the remaining allegations in Paragraph 21.

22. The policy prohibited any expression of Palestinian identity, including symbolic items such as watermelon bracelets, even though Defendant has historically permitted other forms of cultural and political expression—such as Black Lives Matter, Ukraine, and Pride pins, as well as comparable ethnic attire.

**ANSWER:** Defendant admits that it limited the wearing of certain items in the workplace to ensure employees and customers felt safe in the store, among other reasons, and admits that it asked employees to remove bracelets consistent with its Employee Presentation policy. Defendant further admits it has sold watchbands with designs reflecting subjects such as LGBTQ Pride and Black unity, and allowed employees to wear such Apple-provided or Apple-marketed items in the workplace. Defendant denies the remaining allegations in Paragraph 22.

23. On or around December 2, 2023, and throughout the month of December, multiple employees raised concerns about the policy. One employee, Destiny Strothers specifically questioned the policy because it was unwritten and further noted the alienating effect it would have on Palestinian colleagues. Ms. Strothers was later pulled aside by Senior Manager Kihn who characterized her concerns as "disrespectful."

**ANSWER:** Defendant admits that Kihn coached Destiny Strothers on Apple's Business Conduct policy, which requires employees to treat each other with respect and courtesy. Defendant denies the remaining allegations in Paragraph 23.

### December 5, 2023, Letter to Management

24. On December 5, 2023, Mr. Guzman submitted a written letter to Defendant's store and corporate leadership documenting systemic mistreatment of Palestinians and other employees of color at the Lincoln Park store. In the letter, Mr. Guzman recounted that management repeatedly ordered him and dozens of coworkers to remove "Free Palestine" bracelets and other Palestinian

cultural symbols, even though Defendant historically permitted comparable cultural expression such as Ukrainian Flags and Black Lives Matter pins.

**ANSWER:** Defendant admits that Plaintiff sent a letter to Jo Allen, the Store Leader, and other Apple leaders on December 5, 2023. Defendant states the remaining allegations in Paragraph 24 purport to characterize a document which is the best evidence of its contents. Defendant denies the allegations in Paragraph 24 to the extent they fail to fully and accurately describe the referenced document, and denies that it mistreated Palestinians or any other employees of color. Defendant denies the remaining allegations in Paragraph 24.

25. He further detailed that Palestinian identity and cultural attire, including the keffiyeh, were stigmatized as "political" and prohibited, while other ethnic identities were openly celebrated. The letter also reiterated concerns about a broader pattern of Black and brown employees facing disproportionate discipline.

**ANSWER:** Defendant states the allegations in Paragraph 25 purport to characterize a document which is the best evidence of its contents. Defendant denies the allegations in Paragraph 25 to the extent they fail to fully and accurately describe the referenced document, and denies that it mistreated any employees of color. Defendant denies the remaining allegations in Paragraph 25.

26. Mr. Guzman closed the December 5, 2023, letter by requesting a written response by December 11, 2023, seeking clarification on the scope of the new "no bracelet" policy, how it would be enforced (including with respect to other ethnic groups), and whether management could lawfully impose and enforce unwritten, verbal-only policies. Management once again never provided any response or acknowledgment.

**ANSWER:** Defendant states the allegations in Paragraph 26 purport to characterize a document which is the best evidence of its contents. Defendant denies the allegations in Paragraph 26 to the

extent they fail to fully and accurately describe the referenced document. Defendant denies the remaining allegations in Paragraph 26.

### December 2023: Safety Complaints, Escalating Retaliation and Excessive Monitoring

27. On or around December 16, 2023, Store Leader Allen, Manager Rob Ward, and Store Leader Jeremy Frenz convened a roundtable with Mr. Guzman and others.

**ANSWER:** Defendant admits Jo Allen, Rob Ward, Jeremy Frenz, Plaintiff, and other employees were present for a roundtable at the Lincoln Park store on December 16, 2023.

28. Mr. Guzman informed management that the store was understaffed and that employees were being exploited. He also told his coworkers that they had the right to report such conditions to government agencies, specifically naming the National Labor Relations Board (NLRB), the Equal Employment Opportunity Commission (EEOC), the Occupational Safety and Health Administration (OSHA), and the Illinois Department of Human Rights (IDHR).

**ANSWER:** Defendant admits that employees may report allegations of unlawful employment actions to relevant state or federal agencies, including the NLRB, EEOC, OSHA, and IDHR. Defendant further admits that, during the December 16, 2023, roundtable, Plaintiff stated his opinion that Defendant "exploits" its employees and encouraged other employees to report concerns to the NLRB EEOC, OSHA, and IDHR. Defendant denies that it "exploits" employees, denies Plaintiff's other assertions made during the December 16, 2023 roundtable, and denies the remaining allegations in Paragraph 28.

29. Mr. Guzman's own NLRB complaint alleged that Apple management became aware of his union organizing activities and responded with anti-union meetings, heightened monitoring, and retaliatory actions against employees.

**ANSWER:** Defendant admits that Plaintiff filed unfair labor practice charges alleging among other things, that Defendant retaliated against him for engaging in protected, concerted activity. Defendant denies the allegations raised in Plaintiff's NLRB charge, and denies the remaining allegations in Paragraph 29.

30. On or around December 18, 2023, Mr. Guzman filed safety complaints to management and to OSHA regarding cluttered and unsafe mechanical areas, lack of ergonomics training, and lack of protective gloves.

**ANSWER:** Defendant admits it responded to an OSHA letter in December 2023 regarding alleged hazards such as lack of appropriate hand protection, proper lifting techniques for heavy boxes, and exit pathway access. Defendant further admits OSHA closed the matter without issuing a citation. Defendant denies the remaining allegations in Paragraph 30.

31. OSHA issued a notice to Defendant and required partial remedial action.

**ANSWER:** Defendant denies the allegation in Paragraph 31.

32. Mr. Guzman's safety reports were protected whistleblower activity; the timing and escalation of scrutiny after these complaints further demonstrate retaliatory motive.

**ANSWER:** Defendant denies the allegations in Paragraph 32.

33. After these disclosures, management escalated discipline against Mr. Guzman by issuing him negative coaching entries, micromanaging his work, and stationing managers near him to monitor and intimidate him.

**ANSWER:** Defendant admits that it coached Plaintiff on his performance where he failed to meet expectations. Defendant denies the remaining allegations in Paragraph 33.

34.     Within days of submitting his complaints, Sales Department Manager LaSondra Campbell questioned Mr. Guzman's run times (over three minutes between 4:00-5:00 p.m.), even though five-to-seven-minute runs were common due to understaffing. Mr. Guzman had never previously been counseled about run times. Nevertheless, Campbell issued a negative "Grow on the Go" coaching entry, placing it in Mr. Guzman's personnel file for conduct that was routine among employees and ordinarily went unpunished.

**ANSWER:**     Defendant denies the allegations in Paragraph 34.

35.     This unusual negative feedback from a manager outside of his department given the same day he revealed he had reported the store to federal and state oversight bodies creates a strong inference that the feedback was retaliation.

**ANSWER:**     Defendant denies the allegations in Paragraph 35.

36.     About an hour later, Manager Ward pulled Mr. Guzman aside and told him to remain productive while running the product and avoid conversations; when Mr. Guzman asked if sitting was permitted, Manager Ward said yes, but not for extended periods.

**ANSWER:**     Defendant admits that Rob Ward had conversations with Defendant's operations department, including Plaintiff, regarding productivity. Defendant denies the remaining allegations in Paragraph 36.

37.     Later that day, Manager Ward followed up that if Mr. Guzman wished to sit, he had to "partner with a manager," effectively requiring management presence for rest breaks; previously, Operations employees sat briefly between runs, especially when elevators were down.

**ANSWER:**     Defendant denies the allegations in Paragraph 37.

38. Within a day or two, management began stationing a manager at the Operations desk at all times, an unprecedented practice, and began micromanaging run times.

**ANSWER:** Defendant denies the allegations in Paragraph 38.

39. Upon information and belief, the company's heightened surveillance and strict rule enforcement were pretextual measures intended to micromanage Mr. Guzman in order to build a case for his termination.

**ANSWER:** Defendant denies the allegations in Paragraph 39.

40. On December 18, 2023, although not scheduled for a quarterly "connection," Mr. Guzman was pulled aside by Managers Bria James (Product Zone) and Campbell (Product Zone/Genius Bar), neither of whom are his assigned connection leaders.

**ANSWER:** Defendant admits that on or around December 18, 2023 Bria James and LaSondra Campell coached Plaintiff regarding his substandard attendance in November, and admits that neither James nor Campbell were Plaintiff's assigned Connection Leader at that time. Defendant denies the remaining allegations in Paragraph 40.

41. James raised attendance issues, to which Mr. Guzman responded that he would continue engaging in protected activity regarding workplace concerns, including understaffing and the treatment of Black and Palestinian colleagues. James stated that Mr. Guzman would receive the lowest rating, an "Expected More" for attendance. Manager LaSondra Campbell added that Mr. Guzman would also receive an "Expected More" for "innovation," citing a brief conversation Mr. Guzman had with a coworker on runner duty—a common occurrence unrelated to "innovation".

**ANSWER:** Defendant admits that on or around December 18, 2023, Bria James and LaSondra Campell coached Plaintiff regarding his attendance and during that coaching meeting informed Plaintiff that he would be rated "Expected More" in Teamwork for November. Defendant denies the remaining allegations in Paragraph 41.

42. Issuing downgraded ratings tied to Mr. Guzman's protected complaints constitutes retaliation.

**ANSWER:** Defendant denies the allegations in Paragraph 42.

43. On December 22, 2023, Manager Kenny Johnson Jr. told Mr. Guzman, who was speaking with coworker San Cherae, that employees were not supposed to have conversations unless also working; Johnson then walked to his office, outside of which two employees were conversing without working.

**ANSWER:** Defendant denies the allegations in Paragraph 43.

44. Mr. Guzman followed and asked if Johnson would address them; only then did Johnson tell the other employees to stop.

**ANSWER:** Defendant denies the allegations in Paragraph 44.

45. Later that day around 11:00 a.m., Senior Manager Kihn pulled Mr. Guzman aside for missing a download. A "download" is a mandatory meeting between a store leader or manager and the employees scheduled for a particular shift, typically held before the shift begins. Employees on the Operations team often miss downloads when handling tasks such as processing shipments or disposing of garbage. At the download in question, Mr. Guzman was absent because he was taking out garbage and preparing the store for opening.

**ANSWER:** Defendant admits that a "Download" is a standard practice at all retail stores at the beginning of the shift and throughout the workday to provide employees with important companywide and store-specific updates. Defendant further admits that attendance at Downloads is expected of all employees, that employees who cannot attend a Download because they are involved in other work tasks are expected to inform a manager and ask for support in that task, and that Austin Kihn coached Plaintiff on December 22, 2023, regarding Plaintiff's failure to notify a manager regarding his failure to attend a Download that day and in the past. Defendant denies the remaining allegations in Paragraph 45.

46. Believing the repeated interruptions were retaliatory, Mr. Guzman called the Illinois Department of Human Rights and left a message stating he was constantly stopped by managers and felt treated as a second-class citizen; Manager Brian Clinzing overheard the call.

**ANSWER:** Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 46 regarding Plaintiff's beliefs or the contents of Plaintiff's communications with the IDHR and, therefore, denies those allegations. Defendant denies the remaining allegations in Paragraph 46, denies it discriminated or retaliated against Plaintiff or any other employee, and denies that it otherwise engaged in any unlawful conduct.

47. Shortly afterward, Mr. Guzman discussed contacting IDHR with San Cherae in the break-room, and Johnson overheard.

**ANSWER:** Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 47 regarding the contents of Plaintiff's communications with a co-worker and, therefore, denies those allegations. Defendant denies the remaining allegations in Paragraph 46.

48. These events demonstrate that management was aware of Mr. Guzman's civil-rights complaints and chose to monitor him and his protected communications.

**ANSWER:** Defendant denies the allegations in Paragraph 48.

### January 2024: Selective Attire Enforcement; Documented Coaching

49. On January 15, 2024, the heating system at the Lincoln Park store was not functioning despite extreme winter temperatures. The store remained open, exposing employees to unsafe working conditions. Mr. Guzman reported the lack of heat on Defendant's internal WorkJam platform, which was received by store and corporate management. Rather than promptly remedying the issue or addressing Mr. Guzman's concern, Defendant continued to operate the store on one of the coldest days of the year. This incident further illustrates Mr. Guzman's protected activity in reporting workplace safety hazards, as well as Defendant's disregard for both his complaints and employee safety.

**ANSWER:** Defendant admits that on or around January 15, 2024, Plaintiff posted questions on WorkJam regarding the temperature of the Lincoln Park store. Defendant further admits that the area faced extreme winter weather on or around January 15, 2025, the Lincoln Park store remained open with in-store temperatures ranging between 72 and 74 degrees, and Defendant provided outerwear to employees who requested it. Defendant denies the remaining allegations in Paragraph 49.

50. The keffiyeh is a widely recognized cultural symbol of Palestinian identity much like the Desi kurta, Japanese kimono, West African dashiki, and South Asian sari.

**ANSWER:** Defendant lacks sufficient knowledge or information to form a belief regarding the allegations in Paragraph 50 and, therefore, denies those allegations.

51.     Keffiyeh are most commonly worn around the neck as a scarf; notably, scarves are not prohibited by Defendant's dress code.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief regarding how Keffiyeh "are most commonly worn" and therefore denies those allegations.  Defendant denies the remaining allegations in Paragraph 51.

52.     On January 22, 2024, during an off-site, non-client-facing meeting across the street from the store, Mr. Guzman and coworker Madly Espinoza wore keffiyehs.

**ANSWER:**     Defendant admits Plaintiff and a Madly Espinoza, a coworker, wore keffiyehs to work on or around January 21, 2024. Defendant denies the remaining allegations in Paragraph 52.

53.     Before Mr. Guzman clocked in, Market Leader Sherice Louis-Jean instructed him to remove both his keffiyeh and jacket; Mr. Guzman complied, though multiple other employees wore jackets and winter scarves throughout the meeting without issue, including Ayesha (last name unknown) and Jordan Wallace.

**ANSWER:**     Defendant admits that Plaintiff removed his keffiyeh at Sherice Louis-Jean's request when he clocked in to work. Defendant denies the remaining allegations in Paragraph 53.

54.     During a breakout session in a cold hallway, Mr. Guzman and Ms. Espinoza wore jackets and keffiyehs. In the presence of Louis-Jean, they were again told to remove them. Other employees, however, continued to wear their jackets and scarves because of the cold, without being asked to remove them.

**ANSWER:**     Defendant admits that Plaintiff and Espinoza put their keffiyehs back on later in the day, and admits that Plaintiff removed the keffiyeh again after Louis-Jean asked him to remove it. Defendant denies the remaining allegations in Paragraph 54.

55. Employees frequently wore scarves during the winter, a practice routinely permitted without discipline, particularly because the store's heating system did not consistently function properly during colder months.

**ANSWER:** Defendant denies the allegations in Paragraph 55.

56. The selective enforcement targeting only Palestinian cultural expression illustrates disparate treatment compared to other employees wearing scarves.

**ANSWER:** Defendant denies the allegations in Paragraph 56.

57. In the early afternoon of January 22, 2024, Manager Ward and Manager James pulled Mr. Guzman aside; James took notes.

**ANSWER:** Defendant admits that on or around January 22, 2024, manager Rob Ward coached Plaintiff on his attendance, and admits this interaction was recorded in a Performance Coaching Note. Defendant denies the remaining allegations in Paragraph 57.

58. Ward stated Mr. Guzman had been two minutes late on December 2, 2023, and one minute late on January 15, 2024, and recommended eight weeks of Documented Coaching for attendance. Notably, January 15 was a bitterly cold day when the store's heating system was not functioning, and public transportation across Chicago experienced significant delays.

**ANSWER:** Defendant admits that Plaintiff was late for his scheduled shift on December 2, 2023 and January 15, 2024. Defendant further admits that on or around January 22, 2024, Ward told Plaintiff that he planned to recommend a Documented Coaching for performance and attendance. Defendant also admits Chicago experienced extreme winter weather on or around January 15, 2024. Defendant lacks sufficient knowledge or information to form a belief as to the

truth of the allegations in Paragraph 58 regarding public transportation in Chicago and, therefore, denies those allegations. Defendant denies the remaining allegations in Paragraph 58.

59.     Documented Coaching is an internal performance management tool that functions as a formal warning. It also signals that the company is preparing for possible termination if the behavior does not improve within four weeks.

**ANSWER:**    Defendant admits that Documented Coaching is an internal performance management process which generally takes place over a four-week period, and that termination is one possible outcome if the behavior addressed by the Documented Coaching is not improved. Defendant denies the remaining allegations in Paragraph 59.

60.     Mr. Guzman requested the documented-coaching policy in writing; Ward told him to "partner with Jo Allen" to obtain it.

**ANSWER:**     Defendant admits that Plaintiff requested, and Defendant provided, a copy of Plaintiff's Documented Coaching dated January 27, 2024. Defendant denies the remaining allegations in Paragraph 60.

61.     When Mr. Guzman stated he believed the action was retaliatory, James stopped writing until Mr. Guzman requested that she include it; she again stopped when he said he would file a charge with IDHR until he asked that she note that as well.

**ANSWER:**    Defendant admits that the Performance Coaching Note includes a section for "Employee Response" which states "Andres stated he felt retaliated against, targeted and that he will be emailing his attorney and sending an email to the leadership team shortly after our conversation." Defendant denies the remaining allegations in Paragraph 61.

62.     Ultimately, Ward chose not to give Mr. Guzman the Documented Coaching on that date.

**ANSWER:**     Defendant denies the allegations in Paragraph 62.

63.     The threat of excessive penalty for such minor tardiness suggests management was using being one minute late as a pretext for penalizing Mr. Guzman for his protected activities, particularly since one of the cited infractions occurred more than a month earlier, indicating that attendance was not the true motivating factor.

**ANSWER:**     Defendant denies the allegations in Paragraph 63.

64.     On January 27, 2024, Ward again pulled Mr. Guzman aside with Manager Kenny Johnson taking notes to issue a four-week Documented Coaching for attendance.

**ANSWER:**     Defendant admits that Plaintiff received a Documented Coaching on January 27, 2024 for attendance deficiencies, and that the Documented Coaching provided for an improvement period from January 28, 2024, to February 24, 2024. Defendant denies the remaining allegations in Paragraph 64.

65.     Mr. Guzman pointed out there was no pattern of tardiness in the prior 90 days (on time or early 95% of the time in December and January and 100% in November).

**ANSWER:**     Defendant denies the allegations in Paragraph 65.

66.     Ward instead cited a failure to notify on September 17, 2023, and five tardies in October 2023.

**ANSWER:**     Defendant admits the January 27, 2024, Documented Coaching referenced several examples of Plaintiff's failure to meet performance expectations, including Plaintiff's failure to

notify on September 17, 2023, and Plaintiff's late arrivals to work in October 2023. Defendant denies the remaining allegations in Paragraph 66.

67. Mr. Guzman reiterated that Ward and Manager Kevin had previously said attendance would be an issue resulting in an Expected More rating only if Mr. Guzman was late to 20% or more of shifts.

**ANSWER:** Defendant denies the allegations in Paragraph 67.

68. Ward refused when Mr. Guzman asked for a written copy of the conversation and only acknowledged that he could appeal after he pressed Ward on whether appeal was an option.

**ANSWER:** Defendant denies the allegations in Paragraph 68.

69. Issuing Documented Coaching without a contemporaneous pattern, and after Mr. Guzman's protected speech, supports a causal link to protected activity.

**ANSWER:** Defendant denies the allegations in Paragraph 69 and denies that it retaliated against Plaintiff or otherwise engaged in unlawful conduct.

70. On January 28, 2024, Mr. Guzman appealed the Documented Coaching but received no response.

**ANSWER:** Defendant admits Plaintiff requested a Decision Review of the Documented Coaching. Defendant denies the remaining allegations in Paragraph 70.

71. Mr. Guzman successfully completed the coaching period without incident.

**ANSWER:** Defendant admits that on February 26, 2024, Plaintiff successfully completed the Documented Coaching issued on January 27, 2024. Defendant denies the remaining allegations in Paragraph 71.

### April 2024: Termination

72.     On March 29, 2024, Mr. Guzman and approximately 500 other Apple employees sent a letter to Defendant's management and executive leadership expressing concern that Apple has treated workers who show solidarity with Palestinians unfairly. Employees reported being disciplined or accused of "breaking business conduct" and "creating a harmful environment" simply for wearing items like kaffiyehs, pins, bracelets, or clothing reflecting Palestinian identity. The letter further alleges that some employees have even been wrongfully terminated for such expressions of support. The signatories argue that this contradicts Apple's stated commitments to inclusivity, equity, and creating a welcoming workplace.

**ANSWER:**     Defendant admits that Plaintiff is listed as a signatory to an undated public letter published on or around March 29, 2024. Defendant states the remaining allegations in Paragraph 72 purport to characterize a document which is the best evidence of its contents. Defendant denies these allegations to the extent they fail to fully and accurately describe the referenced document, denies it discriminated or retaliated against Plaintiff or any other employee, and denies the remaining allegations in Paragraph 72.

73.     On April 11, 2024, Defendant terminated Mr. Guzman's employment, alleging he created an "unsafe and disruptive work environment."

**ANSWER:**     Defendant admits that on April 11, 2024, it terminated Plaintiff's employment for violating Apple Policy, and that Plaintiff's threatening conduct created an unsafe and disruptive work environment for his peers, in violation of Apple policy. Defendant denies the remaining allegations in Paragraph 73.

74.     The stated reason was pretextual; the termination followed months of selective enforcement, surveillance, and discipline tied to Mr. Guzman's Palestinian advocacy, civil-rights complaints, and safety reporting.

**ANSWER:**     Defendant denies the allegations in Paragraph 74.

### COUNT I - ILLINOIS HUMAN RIGHTS ACT (775 ILCS 5/2-102)

Race, Color, National Origin; Associational

75.     Mr. Guzman incorporates all previously-pled paragraphs as if fully set forth herein.

**ANSWER:**     Defendant restates and incorporates its answers to paragraphs 1 through 74 as if fully set forth herein.

76.     Mr. Guzman is a Latino, Brown, Mexican man who associated with and advocated on behalf of his Palestinian, Arab, and Black colleagues. Defendant discriminated and retaliated against Mr. Guzman in violation of the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq., based on his race, color, national origin, and association with members of a protected group.

**ANSWER:**     Defendant admits that Plaintiff is male and self-identified as Mexican American. Defendant lacks knowledge or information sufficient to form a belief regarding the remaining allegations in the first sentence of Paragraph 76 and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 76.

77.     Defendant's discriminatory practices were carried out in part by Senior Manager Kihn, a white supervisor with a known history of firing Black employees and using racial slurs in the workplace. After his transfer to Lincoln Park, Austin continued to subject employees of color, including Mr. Guzman, to heightened discipline while white employees were not held to the same standard.

**ANSWER:** Defendant denies the allegations in Paragraph 77.

78. Defendant's selective ban on Palestinian cultural attire and symbols targeted Palestinian identity and penalized employees associated with Palestinians, resulting in both direct and associational discrimination.

**ANSWER:** Defendant denies the allegations in Paragraph 78.

79. Defendant targeted Mr. Guzman for increased scrutiny and pretextual punishment after Mr. Guzman raised concerns regarding the discriminatory conduct of management towards Palestinian and Black employees. The Illinois Human Rights Act, as interpreted by the Department's regulations, expressly protects individuals from discrimination based on their association with members of a national origin group. See Ill. Admin. Code tit. 56, § 5220.200(a) (protecting individuals discriminated against because of marriage to or association with persons of a national origin group) and § 5220.200(d) (protecting individuals discriminated against because of membership in, or association with, an organization identified with or seeking to promote the interests of a national origin group). These provisions confirm that Mr. Guzman was protected when he advocated on behalf of Palestinian coworkers and associated himself with their cultural expression.

**ANSWER:** Defendant admits Paragraph 79 purports to characterize a portion of the Illinois Administrative Code. Defendant denies the allegations in Paragraph 79 to the extent they fail to fully and accurately describe the Illinois Administrative Code. Defendant further denies that it discriminated against Plaintiff in any form or fashion and denies the remaining allegations in Paragraph 79.

80. Defendant's unlawful conduct caused Mr. Guzman to suffer significant economic loss, severe emotional distress and humiliation.

**ANSWER:** Defendant denies the allegations in Paragraph 80.

WHEREFORE, Mr. Guzman requests judgment against Defendant and an award in excess of $50,000 together with:

A. Back pay, front pay, and lost benefits;

B. Compensatory damages for emotional distress and reputational harm;

C. Punitive damages;

D. Costs;

E. Attorney fees; and

F. All other relief as the Court deems just and equitable.

**ANSWER:** Defendant admits that Plaintiff purports to seek the relief identified in the WHEREFORE clause following Paragraph 80, but denies all allegations set forth in each and every subparagraph of that clause, denies that it violated any statute or engaged in unlawful conduct, and denies that Plaintiff is entitled to any type of remedy, relief, or damages whatsoever.

<u>COUNT II - ILLINOIS HUMAN RIGHTS ACT (775 ILCS 5/6-101)</u>

Retaliation

81. Mr. Guzman incorporates all previously-pled paragraphs as if fully set forth herein.

**ANSWER:** Defendant restates and incorporates its answers to all Paragraphs 1 through 80 as if fully set forth herein.

82. The Illinois Human Rights Act makes it a civil rights violation "[f]or any employer to retaliate against a person because he or she has opposed that which he or she reasonably and in

good faith believes to be unlawful discrimination ... or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act." See 775 ILCS 5/6-101(A).

**ANSWER:** Defendant admits Paragraph 82 quotes a portion of the IHRA. Defendant denies that it retaliated against Plaintiff and denies the remaining allegations in Paragraph 82.

83. Mr. Guzman engaged in protected activity by opposing discriminatory practices in the work-place, advocating on behalf of Palestinian and Black coworkers, submitting a written complaint to Human Resources about discriminatory treatment, filing with the NLRB and OSHA, and indicating his intent to pursue relief before the IDHR.

**ANSWER:** Defendant admits that Plaintiff made complaints and/or filed charges with Defendant, the EEOC, the IDHR, the NLRB, and OSHA. The remaining allegations in Paragraph 83 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 83.

84. Defendant, through its managers and supervisors, retaliated against Mr. Guzman by selectively enforcing workplace rules, issuing threats of disproportionate discipline, subjecting him to increased monitoring and scrutiny, and ultimately terminating his employment.

**ANSWER:** Defendant denies the allegations in Paragraph 84.

85. Defendant's retaliatory conduct violated §6-101 of the Illinois Human Rights Act.

**ANSWER:** Defendant denies the allegations in Paragraph 85.

WHEREFORE, Mr. Guzman requests judgment against Defendant and an award in excess of $50,000 together with:

A. Back pay, front pay, and lost benefits;

B.      Compensatory damages for emotional distress and reputational harm;

C.      Punitive damages;

D.      Costs;

E.      Attorney fees; and

F.      All other relief as the Court deems just and equitable.

**ANSWER:**    Defendant admits that Plaintiff purports to seek the relief identified in the WHEREFORE clause following Paragraph 85, but denies all allegations set forth in each and every subparagraph of that clause, denies that it violated any statute or engaged in unlawful conduct, and denies that Plaintiff is entitled to any type of remedy, relief, or damages whatsoever.

### COUNT III - ILLINOIS WHISTLEBLOWER ACT (740 ILCS 174)

86.     Mr. Guzman incorporates all previously-pled paragraphs as if fully set forth herein.

**ANSWER:**    Defendant restates and incorporates its answers to Paragraphs 1 through 85 as if fully set forth herein.

87.     Defendant Apple Inc. is an "employer," and Mr. Guzman was an "employee," within the meanings of 740 ILCS 174/5 at all relevant times.

**ANSWER:**    Defendant admits that it was an employer and that it employed Plaintiff between November 14, 2019 to August 2020 and October 22, 2021 to April 11, 2024.

88.     In 2023-2024, Mr. Guzman disclosed and threatened to disclose to his supervisors and to government agencies (EEOC, IDHR, NLRB and OSHA) regarding Apple's unlawful and unsafe employment practices, including chronic understaffing and the intentional exploitation of workers.

**ANSWER:** Defendant admits that Plaintiff made complaints and/or filed charges with Defendant, the EEOC, the IDHR, the NLRB, and OSHA. Defendant denies the remaining allegations in Paragraph 88.

89.     Mr. Guzman's disclosures and threats to disclose were protected under Sections 10 and 15 of the Illinois Whistleblower Act.

**ANSWER:** The allegations in Paragraph 89 are legal conclusions to which no response is required. To the extent a response is required, Defendant admits Plaintiff made complaints and/or filed charges with Defendant, the EEOC, the IDHR, the NLRB, and OSHA, but denies it retaliated against Plaintiff and denies the remaining allegations in Paragraph 89.

90.     Mr. Guzman reasonably believed the information disclosed related to activities, policies, or practices that violated state or federal law, rules, or regulations and/or posed a substantial and specific danger to employees, public health, or safety. 740 ILCS 174/15(a)—(c).

**ANSWER:** Defendant denies the allegations in Paragraph 90.

91.     After and in close temporal proximity to Mr. Guzman's disclosures and threatened disclosures, Defendant took retaliatory action against Mr. Guzman, including heightened surveillance, selectively enforced rules, adverse evaluations/ratings, Documented Coaching, other discipline, and termination on April 11, 2024, actions a reasonable worker would find materially adverse.

**ANSWER:** Defendant denies the allegations in Paragraph 91.

92.     Defendant's adverse actions were because of Mr. Guzman's disclosures, threatened disclosures, and/or reports of suspected violations under the Act. See 740 ILCS 174/15(a)—(c).

**ANSWER:** Defendant denies the allegations in Paragraph 92.

93. Defendant's conduct violates the Illinois Whistleblower Act, including Sections 15(a)-(c).

    a.    740 ILCS 174/15(a): Employers may not retaliate against employees who, in good faith, disclose or threaten to disclose to a public body or in a legal/administrative proceeding, information about employer practices that violate the law or pose a substantial danger.

    b.    740 ILCS 174/15(b): The same protection applies when disclosures are made to a government or law enforcement agency.

    c.    740 ILCS 174/15(c): The same protection also applies when disclosures are made to a supervisor, officer, board member, or contracting organization. 94. As a direct and proximate result, Mr. Guzman suffered lost wages and benefits, reputational harm, emotional distress, and other damages.

**ANSWER:** Defendant admits Paragraph 93 purports to characterize a portion of the Illinois Whistleblower Act. Defendant denies those allegations to the extent they are inconsistent with the text of the Illinois Whistleblower Act, denies that it has violated any provision of the Illinois Whistleblower Act, and denies the remaining allegations in Paragraph 93.

WHEREFORE, Mr. Guzman requests judgment against Defendant and an award in excess of $50,000 together with:

    A.    Back pay, front pay, and lost benefits;

    B.    Compensatory damages for emotional distress and reputational harm;

    C.    Punitive damages;

    D.    Costs;

    E.    Attorney fees; and

F.    All other relief as the Court deems just and equitable.

**ANSWER:**    Defendant admits that Plaintiff purports to seek the relief identified in the WHEREFORE clause following Paragraph 93, but denies all allegations set forth in each and every subparagraph of that clause, denies that it violated any statute or engaged in unlawful conduct, and denies that Plaintiff is entitled to any type of remedy, relief, or damages whatsoever.

### DEMAND FOR JURY TRIAL

Mr. Guzman demands a trial by jury on all issues so triable.

**ANSWER:**    Defendant admits that Plaintiff has demanded a trial by jury on all issues so trial, but denies that Plaintiff is entitled to any relief.

### APPLE'S AFFIRMATIVE AND ADDITIONAL DEFENSES

Defendant Apple Inc., by and through its attorneys, hereby asserts the following affirmative and other defenses:

1.    Plaintiff's claims are barred to the extent he failed to exhaust administrative remedies and/or satisfy some or all conditions precedent required to bring his claims.

2.    Plaintiff's claims are barred, in whole or in part, to the extent that such claims have been released, waived, discharged, and/or abandoned.

3.    Some or all of Plaintiff's claims are barred to the extent they arose outside the applicable statute of limitations period.

4.    Defendant exercised reasonable care to prevent and promptly correct any alleged discriminatory conduct, by, among other things, providing regular training to supervisors and managers regarding Defendant's policies against discrimination and retaliation, making its policies against discrimination and retaliation accessible to Plaintiff and other employees, encouraging

employees to report inappropriate conduct, investigating reports of inappropriate conduct, and taking steps to correct such conduct if it occurs.

5.     Plaintiff's claims are not actionable because the challenged employment decisions are justified by legitimate, non-discriminatory, non-retaliatory, and non-pretextual business reasons.

6.     Plaintiff's claims are barred, in whole or in part, because any allegedly retaliatory action was predicated solely upon grounds other than the employee's exercise of any rights protected by the Illinois Whistleblower Act. *See* 740 ILCS 174/32.

7.     Defendant denies that it was motivated by any impermissible motive in any decision or action concerning Plaintiff, but it affirmatively pleads that it would have made the same decisions or taken the same actions in the absence of any impermissible motive.

8.     Defendant denies that and of its employees or agents, acting within the course and scope of their employment or agency, violated any statute, regulation, constitutional provision, common law or public policy or caused any damage or injury to Plaintiff. Any unlawful conduct allegedly engaged in by Defendant's employees, supervisory or otherwise, was outside the scope of their employment, contrary to Defendant's policies, and was not ratified, confirmed, or approved by Defendant.

9.     Defendant cannot be liable for punitive damages to Plaintiff, including without limitation, because any wrongful conduct that Plaintiff may prove to have suffered was contrary to Defendant's good faith efforts to comply with the law and prevent discrimination and retaliation in the workplace, and because Defendant did not act with malice or reckless indifference to Plaintiff's legally protected rights. This includes, without limitation, that Defendant has policies against discrimination, harassment and retaliation.

10.     Defendant cannot be liable for punitive damages because it has not engaged in any conduct of a reckless, malicious or egregious nature, including without limitation, because Defendant has policies against discrimination, harassment, and retaliation.

11.     An award of punitive damages under the circumstances of this case would constitute an excessive fine and otherwise would be in violation of Defendant's due process and other rights under the United States Constitution, including without limitation, because Defendant has policies against discrimination, harassment, and retaliation.

12.     An award of punitive damages is unavailable under the circumstances of this case for some or all of the causes of action Plaintiff alleges, including under the IHRA and the Illinois Whistleblower Act.

13.     Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

14.     Plaintiff's claims are barred, in whole or in part, by the doctrines of laches and estoppel.

15.     Any emotional distress allegedly suffered by Plaintiff was not caused by Defendant or any of its agents.

16.     Plaintiff's claims are barred or diminished to the extent he has failed to minimize or mitigate his damages.

17.     Defendant consistently maintains, implements, and enforces policies in the workplace against discrimination, harassment and retaliation, and otherwise exercised reasonable care to prevent and correct promptly any claims of alleged discrimination, harassment, or retaliation. Plaintiff unreasonable failed to take advantage of preventive and corrective opportunities or to avoid harm otherwise.

18.     Plaintiff's claims may be barred, in whole or in part, because any damages or losses that Plaintiff has alleged, if they exist at all, were proximately caused or contributed to by the conduct of Plaintiff.

19.     To the extent that Plaintiff has received any income from other employment or any other sources, such monies must be offset against any damages allegedly due to Plaintiff from Defendant.

20.     To the extent during the course of this litigation Defendant acquires any evidence of additional wrongdoing by Plaintiff, which wrongdoing would have materially affected the terms and conditions of Plaintiff's employment, such after acquired evidence shall bar Plaintiff on liability or damages or shall reduce any right to relief as provided by law.

WHEREFORE, having fully answered the Complaint, Defendant respectfully prays that this Court enters judgment in its favor and against Plaintiffs, dismisses the Complaint in its entirety, awards Defendant its costs incurred in this action, including attorneys' fees, and order such other and further relief as the Court deems just and proper.

Dated:  November 24, 2025                        Respectfully submitted,

APPLE INC.

By:  /s/ *Stephanie L. Sweitzer*
     One of Its Attorneys

Stephanie L. Sweitzer
Patrick R. Duffey
Christopher B. Dempsey
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL  60606-1511
Telephone:    +1.312.324.1000
Facsimile:     +1.312.324.1001
stephanie.sweitzer@morganlewis.com
patrick.duffey@morganlewis.com
chris.dempsey@morganlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, Stephanie L. Sweitzer, hereby certify that on this 24th day of November, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to counsel of record for this case.

*/s/ Stephanie L. Sweitzer*
Stephanie L. Sweitzer